UNITED STATES of America, Appellee,

v.

**Charles Kemp DRURY, Appellant.**

**No. 78–1131.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1978.

Decided Sept. 5, 1978.

Richard A. Duncan of Duncan, Olinger, Srstka, Maher & Lovald, Pierre, S. D., for appellant.

Gary G. Colbath, Asst. U. S. Atty., argued, Sioux Falls, S. D., David V. Vrooman (former U. S. Atty.), and Gary G. Colbath, Asst. U. S. Atty., on brief, for appellee.

Before BRIGHT, Circuit Judge, INGRAHAM, Senior Circuit Judge,* and STEPHENSON, Circuit Judge.

INGRAHAM, Circuit Judge.

This case arose out of the proposed conjugation of two of the world's oldest professions, politics and prostitution. Appellant Charles Kemp Drury was convicted of violating the Mann Act, 18 U.S.C. § 2422

---

* The Honorable Joe Ingraham, United States Senior Circuit Judge for the Fifth Circuit, sitting by designation.

(1970),[1] for inducing Minnesota prostitutes to ply their trade during the 1977 annual session of the South Dakota Legislature in Pierre, South Dakota. Politics makes strange bedfellows. We affirm the conviction.

In November 1976, appellant, a South Dakota pigeon breeder, traveled to Remsen, Iowa, to discuss a business proposition with Floyd "Pops" Barron, a seventy-three year old retired chef. Appellant wanted "Pops" to be the "madam" of a mobile home for prostitutes in Pierre, South Dakota, during the upcoming session of the South Dakota Legislature. "Pops" consented to live in the mobile home and protect the wayward women.

Appellant then traveled to Minneapolis, Minnesota, with Robert Winckler, a former booking agent for go-go dancers. When appellant asked if he knew any prostitutes who might be interested in working in Pierre, Winckler gave appellant the name and telephone number of Sue Lynn Nolan in Minneapolis. Appellant telephoned Nolan to ask her if she would be interested in working in Pierre during a forthcoming "convention." When she agreed, appellant told her that he would pay her $100 extra for each girl she brought with her to Pierre. Consequently, Nolan contacted two other Minneapolis prostitutes, Kathleen Lee Griggs and a minor named Dawn,[2] who agreed to join the venture.

On January 18, 1977, Griggs and Dawn flew from Minneapolis to Pierre aboard a North Central Airlines flight.[3] They were met at the Pierre Airport by appellant. On January 21, 1977, Nolan flew by the same airline from Minneapolis to Pierre, where she was also met by appellant.

During their stay in Pierre, the three girls resided at appellant's mobile home. Appellant drove the girls to various bars, lounges, clubs and hotels in Pierre, where the girls turned their "tricks."

Dawn left Pierre after a week or so.[4] Nolan and Griggs continued to work for about four weeks of the legislative session, until they were told to leave town by the Pierre police.

A federal grand jury sitting in Deadwood, South Dakota, returned an indictment against appellant on September 8, 1977, charging him with two counts of violating the Mann Act, 18 U.S.C. § 2422 (1970). The first count charged that appellant persuaded, induced and enticed Griggs and Dawn to travel from Minnesota to South Dakota by common carrier in interstate commerce with the intent that Griggs and Dawn engage in prostitution. The second count charged appellant with the same conduct in relation to Nolan.

The case was tried before a jury which, on November 16, 1977, rendered a guilty verdict on both counts. After judgment was entered, appellant was sentenced to the custody of the Attorney General for three years. The court suspended two and a half years of the sentence and ordered three years of probation.

---

1. The Mann Act, or White Slave Traffic Act, 18 U.S.C. § 2422 (1970) provides:

    Whoever knowingly persuades, induces, entices, or coerces any woman or girl to go from one place to another in interstate or foreign commerce, or in the District of Columbia or in any Territory or Possession of the United States, for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose on the part of such person that such woman or girl shall engage in the practice of prostitution or debauchery, or any other immoral practice, whether with or without her consent, and thereby knowingly causes such woman or girl to go and to be carried or transported as a passenger upon the line or route of any common carrier or carrier in interstate or foreign commerce, or in the Dis-

trict of Columbia or in any Territory or Possession of the United States, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

2. Seventeen year old Dawn was known to Sue Lynn Nolan and Kathleen Lee Griggs only by her first name. She was not present at trial and her last name is not in the record.

3. North Central Airlines is a common carrier operating in interstate commerce.

4. There was conflicting testimony about the reasons for Dawn's early departure. One explanation was that she was unhappy about her wages. Another explanation was that she was lonely for her boyfriend in Florida.

Appellant urges three grounds for reversal on this appeal: (1) insufficient evidence to support the jury's verdict; (2) error in admitting into evidence testimony of prior acts; and (3) error in instructing the jury on the meaning of "immoral purpose."

Appellant's first argument is that the evidence was insufficient to support the jury's verdict. He argues that his intention was merely to book dancers for "private parties" during the South Dakota legislative session. Appellant further argues that since Sue Lynn Nolan, not he, consummated the agreement with Griggs and Dawn to come to South Dakota, he could not have possessed the requisite intent for a Mann Act violation pertaining to them.

To have committed a Mann Act violation, appellant must have knowingly persuaded the women to travel across state lines with the intention that they engage in prostitution. *Reamer v. United States*, 318 F.2d 43, 49 (8th Cir.), *cert. denied*, 375 U.S. 869, 84 S.Ct. 129, 11 L.Ed.2d 95 (1963). "[I]f the evidence viewed in light most favorable to the Government is such that reasonable minds 'might differ' then the question becomes one of fact for the jury to resolve, and not one of law to be determined by the courts." *Isaacs v. United States*, 301 F.2d 706, 727 (8th Cir.), *cert. denied*, 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58 (1962); *Durns v. United States*, 562 F.2d 542, 545–46 (8th Cir.), *cert. denied* 434 U.S. 959, 98 S.Ct. 490, 54 L.Ed.2d 319 (1977); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

■ Viewing the evidence in the light most favorable to the government, the jury's inference of intent was reasonable. Both Nolan and Griggs testified that they understood appellant's offer of employment as an invitation to practice prostitution in Pierre, South Dakota. Nolan testified that

she had asked Griggs and Dawn to join her in Pierre at appellant's behest.[5]

Appellant's second argument is that the trial court erred in admitting into evidence testimony of prior criminal acts. When the prosecutor asked Griggs on direct examination if appellant had discussed with Griggs any girls other than Nolan, Dawn and herself, Griggs answered over appellant's objection: "Yes. [Appellant told me] [t]here were some black girls brought into town before—prior to us and they had been staying in a trailer in Ft. Pierre and the people freaked out because they said they were wearing bathing suits and running around naked and stuff."

■ Appellant contends that such testimony was inadmissible under Fed.R.Evid. 404(b). Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Under this rule, evidence of other wrongdoing is admissible only if the trial court makes the following findings: (1) a material issue is raised on a subject for which such evidence is admissible; (2) the proffered evidence is relevant to that issue; (3) the wrongdoing is similar in kind and reasonably close in time to the offense charged; (4) the evidence is clear and convincing; and (5) the probative value of the evidence outweighs its prejudicial possibilities. *United States v. Clemons*, 503 F.2d 486, 489 (8th Cir. 1974).[6]

This court has expressly held that, in order to establish the intent required for a Mann Act violation, the prosecution may

---

5. The trial judge charged the jury in accord with 18 U.S.C. § 2(a) (1970): "Whoever commits an offense against the United States, or willfully aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal."

6. The *Clemons* test has apparently survived the adoption in 1975 of the Federal Rules of Evidence. *See United States v. Jardan*, 552 F.2d 216, 218–19 (8th Cir.), *cert. denied* 433 U.S. 912, 97 S.Ct. 2982, 53 L.Ed.2d 1097 (1977). *But see United States v. Maestas*, 554 F.2d 834, 836–37 n. 2 (8th Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1070 (1977).

admit into evidence testimony that the defendant had solicited girls on prior occasions. *Neff v. United States*, 105 F.2d 688, 692 (8th Cir. 1939).

Appellant's intent is a material issue. *See Reamer*, 318 F.2d at 49. Testimony that appellant had employed prostitutes on prior occasions is relevant to his intent in employing prostitutes in the instant case. The prior acts were similar in kind and, according to the testimony, close in time to the conduct at issue in this case. A witness' testimony of the defendant's confession to other crimes is *a fortiori* clear and convincing. *United States v. Davis*, 551 F.2d 233, 234 (8th Cir.), *cert. denied*, 431 U.S. 923, 97 S.Ct. 2197, 53 L.Ed.2d 237 (1977). The testimony was also "complete enough . . . [to] warrant a jury finding that that prior conduct was intentional or knowing." *Clemons*, 503 F.2d at 490.

In assessing the relative prejudice and probative value of evidence of prior criminal conduct, "we must give great deference to the district judge, who saw and heard the evidence." *United States v. Maestas*, 554 F.2d 834, 836 (8th Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1070 (1977). We acknowledge that the testimony was probative and that the trial judge gave a limiting instruction to minimize possible prejudice.[7] By admitting into evidence testimony of appellant's prior conduct, the trial judge did not abuse his discretion. *See United States v. Adcock*, 558 F.2d 397, 402 (8th Cir.), *cert. denied*, 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977).

Appellant's third argument is that the trial court erred in instructing the jury on the meaning of "immoral purpose." The instruction to which appellant objects is as follows:

In order to establish that interstate transportation or travel was for an "immoral purpose", the evidence in the case need not show that prostitution was the only purpose of the transportation or travel. A person may have several different motives or reasons for doing a particular act such as travelling; and all such reasons may, in varying degrees, prompt the act of making a particular trip or journey. Proof of an "immoral purpose" is sufficient if the evidence in the case establishes beyond a reasonable doubt that, at the time the woman or girl designated in the indictment crossed state lines, from one state into another state, prostitution was one of the dominant purposes of such interstate travel.

Appellant contends that the instruction is erroneous, because it fails to state that appellant must have had an "immoral purpose" in inducing the girls to cross state lines.

The argument is without merit, given that a complementary instruction focused on appellant's state of mind:

You may not find the defendant guilty simply because you determine that he caused Kathleen Lee Griggs, Dawn (last name unknown) and Sue Lynn Nolan to be transported across a state line and that they engaged in prostitution after they were so transported, unless you also find beyond reasonable doubt that, prior to causing the transportation, the defendant formed the intent to have them engage in prostitution and caused their transportation for that purpose.

Moreover, the charge of which appellant complains is a pattern jury instruction found in 2 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions: Civil and Criminal § 63.06 (3d ed. 1977).[8] We implicitly approved this instruction in *Reamer*,

---

7. The trial judge instructed the jury: "Evidence of any other alleged violations of the Mann Act may be considered by you only for the purpose of tending to show, if it does so show, the disposition of the Defendant or the plan or

intent of the Defendant, to participate in the offense for which he is here on trial."

8. *See Mortensen v. United States*, 322 U.S. 369, 377, 64 S.Ct. 1037, 88 L.Ed. 1331 (1944); *Cleve-*

318 F.2d at 48–49.[9] The instruction was not erroneous.

The evidence is sufficient to support the verdict. The trial court's evidentiary ruling and jury instruction were proper. Accordingly, we affirm the conviction.

AFFIRMED.

---

*land v. United States*, 329 U.S. 14, 20, 67 S.Ct. 13, 91 L.Ed. 12 (1946).

**9.** The instruction was expressly upheld in *United States v. Lomas*, 440 F.2d 335, 338 (7th Cir.), *cert. denied*, 404 U.S. 842, 92 S.Ct. 137, 30 L.Ed.2d 76 (1971).