STATE of Minnesota, City of Minneapolis, petitioner, Appellant,

v.

Lorri Ann CLARK, Respondent.

No. 50231.

Supreme Court of Minnesota.

May 16, 1980.

Rehearing Denied June 30, 1980.

Warren Spannaus, Atty. Gen., St. Paul, Robert J. Alfton, City Atty. and David M. Gross, Asst. City Atty., Minneapolis, for appellant.

William R. Kennedy, County Public Defender, and Patrick J. Sullivan, Asst. Public Defender, Minneapolis, for respondent.

Heard before PETERSON, YETKA, and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

The defendant, Lorri Ann Clark, was convicted of common prostitution in violation of Minneapolis Code of Ordinances § 385.-150 (1976) and sentenced to 90 days in the Hennepin County Detention Center. Defendant's motion for a new trial was denied, whereupon she appealed to the Hennepin County District Court. The three-judge appeals panel reversed defendant's conviction and remanded the case for a new trial. The state now appeals from that adverse decision.

The issue before the panel and before this court is whether it is reversible error to permit a defendant, charged with prostitution, to be cross-examined with regard to previous arrests for and guilty pleas to charges of loitering with intent to solicit for prostitution in violation of a municipal ordinance. We affirm the appeal court holding that such cross-examination constitutes reversible error, and remand for a new trial.

The record reveals the following facts:

Just before defendant's trial, the prosecutor moved the court for permission to cross-examine the defendant regarding "two occurrences to which she pled guilty." The prosecutor stated:

I do not intend to introduce it to produce a conviction, I intend to ask, in this case, whether in fact, on the evening of June 6 and whether, in fact, on the evening of June 7 she was hanging around * * * the Guest House Motel * * *

intending to find men to proposition and commit sexual intercourse. If she, in fact, says no, then I intend to ask her whether, in fact, she pled guilty and, in fact, admitted to the bases of those charges.

The prosecutor argued that the evidence was offered to show intent and motive under Rule 404(b) of the Minnesota Rules of Evidence. He stated that he did not "intend to bring it up if she is not going to testify." The prosecutor's motion was granted, over defendant's objections. The defendant did not request that limiting instructions be given.

Sergeant Billings testified at trial that he, dressed in "cowboy" attire, was on duty around 1:30 a. m. on June 11, 1978, outside of Hill's Cafe at Tenth Street and Second Avenue South in Minneapolis, checking on the cafe because prostitution was common to the area. He noticed the defendant, whom he knew from police records, and two other women outside of the cafe waving to cars as they went by and talking to men as they went in and out of the cafe. Sergeant Billings went into the cafe for a few minutes, then came back outside and talked to a man near the entrance. Defendant then said to Billings, "come on over here, cowboy," asked if he wanted a date and how much he was willing to spend, and offered specific sexual services for specific prices. When Billings accepted her offer, defendant asked him where he was staying, and they arranged to go to the Sheraton Ritz downtown. She said she had to tell her girlfriends where she was going, so she whispered something to them before they got into Sergeant Billings' car and they drove to the Sheraton Ritz. In the ramp at the hotel, Billings arrested her.

The defendant took the stand and admitted that she was at Hill's Cafe around 1:30 a. m. on June 11, but denied propositioning Sergeant Billings or ever engaging in sexual activity for pay. She said she frequently went to the cafe because she knew the owner and several of the waitresses who worked there. She testified that she was sitting on a friend's car outside the cafe

when Sergeant Billings arrived. When he came out of the cafe, Billings spoke to the man on whose car she was sitting and then told her not to say anything because he did not want the other two women to know he was a police officer. He then told her to tell her friends that they were going to the Sheraton Ritz. She testified that she told her friends that she and Billings were going to the 19th floor of the Sheraton Ritz, where there are no hotel rooms, so that they would know he was a police officer. She testified that she knew Billings was a police officer because she had seen him in Hill's Cafe before, and she thought he was "with me when some other vice officers arrested me last year."

On cross-examination, the prosecutor asked defendant, over objection, whether she was at the Guest House Motel on the evenings of June 6 and 7, 1977, to which she replied she may have been there, since she has a lot of friends there, but denied soliciting anyone there. In response to questioning by the prosecutor, defendant indicated she had been arrested on those evenings and charged with loitering with intent to solicit for prostitution, to which charges she had pled guilty.

On redirect, defendant testified that neither the cafe owner, the waitress friends, the two women with the defendant that night, nor the man who was outside the cafe could hear the conversation between the defendant and Sergeant Billings. Billings was then recalled to the stand in rebuttal to testify that he had been in Hill's Cafe only once before June 11 and that the defendant had not been there that night. He also testified that he had never been involved in an arrest of defendant before June 11.

In closing argument, the prosecutor told the jury that they should give great weight to defendant's testimony that she had pled guilty to "prior similar crimes in this area" because "it shows motive, it shows lack of mistake and it clearly substantiates the testimony of Sergeant Billings." The court gave a general cautionary instruction to the jury at the end of trial that evidence of an alleged earlier similar offense committed by defendant may not be considered in determining whether the accused is guilty of the offense charged at trial.

■ In *City of St. Paul v. DiBucci,* 304 Minn. 97, 229 N.W.2d 507 (1975), this court held that when a defendant in a criminal case takes the stand, his credibility may not be impeached by evidence of a prior conviction under a municipal ordinance. The court reasoned that a conviction of an ordinary ordinance violation has less probative value than a conviction for a felony or misdemeanor because, since the punishment for ordinance violation is relatively light, the defendant is more likely to plead guilty and less likely to fully exercise his rights in defense of the charge. Therefore, the prejudicial effect of admitting evidence of the ordinance violation outweighs its probative value as to credibility. Use of such evidence for impeachment is reversible error.

■ The prosecution admits that use of the defendant's guilty plea to prior municipal ordinance violations is improper impeachment. However, the prosecution argues that the evidence was not offered to impeach the defendant but was offered to prove intent and motive and is therefore admissible under Rule 404(b)[1] of the Minnesota Rules of Evidence.[2] None of the proper purposes enumerated in Rule 404(b) were material issues in the case, despite the fact

---

1. Rule 404(b) provides as follows:

    Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

2. The government also argues that the defendant failed to appeal the trial court's ruling regarding the prior-crime evidence, and therefore any error was waived. However, the transcript reveals numerous objections to the evidence, and a glance at appellant's brief to the district court and the panel's order reveals that the evidentiary ruling was properly appealed below.

that intent is an element of the crime of prostitution. The real issue was credibility. The sergeant testified that defendant propositioned him. The defendant testified that she knew he was a police officer and so did not proposition him. The prosecution argues that it elicited the evidence to prove intent on cross-examination, rather than in its case-in-chief, to eliminate the necessity of calling extra witnesses. However, this contradicts the prosecutor's statement that he would not bring out the prior guilty pleas if the defendant did not testify. Furthermore, the prosecutor's statement in closing argument that defendant's pleas of guilty substantiated the testimony of Sergeant Billings indicates that credibility was at least one of the reasons that the testimony was elicited, if not for the additional improper purpose of indicating that because she had been arrested for prostitution-related activity before she is more likely to have engaged in prostitution in this case. Thus, the instant case is unlike *State v. Corarito*, 268 N.W.2d 79 (Minn.1978), where the evidence of other criminal activity was admissible under Rule 404(b) because the state legitimately felt that it needed the evidence in order to meet its burden of proof.

The prosecution also seeks to justify the admission of the evidence under Rule 611(b) of the Minnesota Rules of Evidence. Rule 611(b) provides that an accused who testifies in a criminal case may be cross-examined on any matter relevant to any issue in the case, including credibility. The Committee Comment states that the scope of cross-examination of the accused is limited only by the principles of relevancy, and thus Rule 611(b) cannot make evidence admissible which is inadmissible under *DiBucci*, Rule 404(b), or other principles of relevancy.

The prosecution's third argument is that the evidence is admissible under the principles of *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). In *Harris*, the U.S. Supreme Court held that prior statements of the defendant regarding the crime charged made to the police without proper *Miranda* warnings, although inadmissible in the state's case-in-chief, were admissible for the purpose of impeaching inconsistent statements made during direct examination. In the instant case, defendant made no specific statements during direct examination concerning her two previous arrests for loitering, although she did make a vague reference to having been arrested before. Furthermore, *Harris* did not involve evidence of prior municipal ordinance violations. The government's argument based on *Harris* is confusing, considering the fact that it consistently maintains that the evidence was *not* elicited for the purpose of impeachment but as part of its case-in-chief.

■ Even if the evidence were admissible under any of the prosecution's theories, it may still be excluded by Rule 403 of the Minnesota Rules of Evidence if its probative value is outweighed by its prejudicial effect. Assuming the evidence in question had probative value beyond impeachment, it was highly prejudicial and made it unlikely that the jury would come to a conclusion other than that the defendant had a propensity to commit prostitution. Such a conclusion is impermissible. *State v. Forsman*, 260 N.W.2d 160, 166 (Minn.1977). Furthermore, where it is unclear whether or not prior-crime evidence is admissible, the defendant must be given the benefit of the doubt. *State v. Titworth*, 255 N.W.2d 241, 246 (Minn.1977).

We hold that under this court's decision in *City of St. Paul v. DiBucci*, 304 Minn. 97, 229 N.W.2d 507 (1975), a defendant charged with prostitution may not be cross-examined with regard to previous arrests for and guilty pleas to charges of loitering with intent to solicit for prostitution in violation of a municipal ordinance.

Affirmed.

KELLY, Justice (dissenting).

I respectfully dissent. In a prosecution for prostitution in violation of a city ordinance, evidence of prior arrests and convictions for the same offense is admissible to show *inter alia* intent, knowledge or absence of mistake. Rule 404(b) of the Minnesota Rules of Evidence provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *United States v. Drury*, 582 F.2d 1181 (8th Cir. 1978), the court held that evidence that the defendant employed prostitutes on prior occasions was admissible in order to show he possessed the requisite intent for a violation of the Mann Act. The court held that under Rule 404(b) of the Federal Rules of Evidence, identical to Rule 404(b) of the Minnesota Rules of Evidence, evidence of other wrongdoing is admissible if the trial court makes the following finding:

> (1) a material issue is raised on a subject for which such evidence is admissible; (2) the proffered evidence is relevant to that issue; (3) the wrongdoing is similar in kind and reasonably close in time to the offense charged; (4) the evidence is clear and convincing; and (5) the probative value of the evidence outweighs its prejudicial possibilities. *Id.* at 1184.

When assessing the relative prejudice and probative value of prior wrongdoing on review, the trial court should be given great deference. The trial court may not be reversed unless it abused its discretion in admitting this evidence. *Id.* at 1185. *Accord, United States v. Matlock*, 558 F.2d 1328 (8th Cir.) (evidence that defendant possessed 61 credit cards in 3 different names admissible on the issue of intent to defraud in prosecution for making false statements on credit card application), *cert. denied*, 434 U.S. 872, 98 S.Ct. 218, 54 L.Ed.2d 152 (1977); *United States v. McPartlin*, 595 F.d 1321 (7th Cir.) (evidence of defendant's corporate officer's prior bribes of foreign officials properly admitted on the issue of defendant's intent to bribe city officials), *cert. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979).

It is also clear that use of such evidence for purposes of impeachment is improper under Rule 609 of the Minnesota Rules of Evidence as well as *City of St. Paul v. DiBucci*, 304 Minn. 97, 229 N.W.2d 507 (1975).

The majority concludes that because the evidence of defendant's prior arrests and convictions for prostitution was introduced during cross-examination, and had the incidental effect of substantiating one witness' testimony, the evidence was used to impeach defendant's testimony. I have serious doubts as to the soundness of a method of differentiating impeachment evidence from substantive evidence based on the point at which the evidence is elicited at trial. Under the majority's view, evidence introduced during cross-examination is impeachment evidence while the same evidence, if introduced in the city's case-in-chief, would have been substantive evidence.

It was the city's burden to show beyond a reasonable doubt that defendant intended to solicit for purposes of prostitution. The purpose of introducing defendant's prior arrests and convictions for prostitution was to show that she approached Sergeant Billings with the intention of soliciting him for prostitution when she spoke with him outside Hill's Cafe on June 11, 1978. I am not persuaded that the introduction of this evidence in cross-examination attacked defendant's credibility any more than it would have been attacked if introduced in the city's case-in-chief.

The task of assessing the probative value and prejudicial effect of evidence is committed to the trial court's discretion and its decision should not be reversed unless it can be characterized as an abuse of discretion. *State v. Titworth*, 255 N.W.2d 241, 246 (Minn.1977).

While the majority seems to narrowly hold that a defendant charged with prostitution may not be cross-examined as to prior arrests or convictions for similar ordinance violations, there is considerable language in the majority opinion which would have a chilling effect on a trial court when determining whether to admit Rule 404(b) evidence in the city's case-in-chief. I would

reverse the decision of the trial court and affirm defendant's conviction.

SHERAN, Chief Justice, and TODD and SCOTT, Justices (dissenting).

We join in the dissent of KELLY, J.