STATE of Minnesota, Appellant,

v.

Patrick Wayne NUTT, Respondent.

No. C3–85–2070.

Court of Appeals of Minnesota.

Feb. 11, 1986.

Review Denied March 27, 1986.

Hubert H. Humphrey, III, Atty. Gen., Debra A. Jacobson, Asst. Olmsted Co. Atty. Rochester, for appellant.

Joseph F. Chase, Rochester, for respondent.

Considered and decided by WOZNIAK, P.J., and SEDGWICK and FORSBERG, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

This is a pretrial appeal by the State, pursuant to Minn.R.Crim.P. 28.04, from an order of the trial court suppressing evidence of prior offenses and wrongful acts. The trial court ruled that the *Spreigl* evidence would be inadmissible for substantive purposes, but that evidence of any prior convictions would be admissible for impeachment purposes if defendant took the stand. We affirm in part, reverse in part, and remand for further trial court proceedings.

## FACTS

On the afternoon of March 6, 1985, D.R.A., an eleven-year-old boy, was walking home from school in southeast Rochester, Minnesota when a brown Honda hatchback pulled up at the curb. The driver of the car was nineteen-year-old Patrick Wayne Nutt, the defendant in this case.

According to D.R.A., defendant rolled down his window and asked if the boy knew a Kevin Lundquist. When D.R.A. said that he didn't, defendant asked him how old he was and if he wanted to make thirty dollars. The boy asked, "What for?" Defendant replied, "Well, do you know how to come yet?" The boy said no. Defendant asked "Do you know what it means?" Again the boy said no. Defendant said, "Well, O.K.," and drove away. D.R.A. got the license plate number of the car and

then ran home to tell his parents what had happened.

The police checked the license plate number and identified defendant as the owner of the car. An officer drove to the defendant's address and as he approached the residence, he saw the car coming around the corner. The car sped away and apparently cut through some backyards to evade the police officer, but was eventually stopped. D.R.A. positively identified the car as the one driven by the man who spoke to him.

The defendant admitted trying to flee the police because he thought they wanted to talk to him about a criminal case pending against him in Austin, Minnesota. He admitted stopping and asking D.R.A. if he knew a Kevin Lundquist and asking him his age. He stated that he told D.R.A. he was looking for Lundquist because Lundquist owed him thirty dollars. He denied offering the boy thirty dollars or asking him if he knew "how to come yet."

Defendant was charged with solicitation for prostitution in violation of Minn.Stat. § 609.324, subd. 1(2) (1984). Pursuant to Minn.R.Crim.P. 7.02, the prosecution notified defendant that it intended to introduce evidence of two prior offenses by the defendant.

The first prior offense which the State seeks to introduce into evidence is similar to the offense with which defendant is charged here. During the investigation of the March 6, 1985 Rochester offense, a Rochester police department detective interviewed A.J.K. and R.J.M., two twelve-year-old male classmates of D.R.A. Both boys told the detective that on an afternoon in January 1985, they were collecting money for a paper route in southeast Rochester. As they crossed an intersection, they noticed a brown hatchback stopped at a red light. Both boys noticed a man in the car. The boys continued down the street, collecting paper money from some more people. A few blocks later, the man that they had seen in the brown car came walking around a corner. He walked part way up one block, then turned around and walked back toward the boys. He approached them and asked if they wanted to make ten dollars each. When the boys asked the man what they had to do, he said that if they met him at a local parking lot at 5:30 p.m., he would give them "a nice blow job." The boys told the police that they understood what this meant. The boys walked to R.J.M.'s house and told his mother, but because they didn't know who the man was and didn't have a license plate number, they didn't call the police. Both boys were shown a photographic lineup consisting of eight photographs and both identified the defendant as the man who had offered them ten dollars in exchange for a sexual act.

The other prior offense took place in Austin, Minnesota. In September of 1984, the Austin police department received a report of sexual abuse of a young boy, D.J. Although D.J. denied that anything had happened to him, he stated that one night he had been in a basement apartment in Austin and had seen the defendant molesting defendant's nine-year-old brother, S.N. S.N. stated that defendant first abused him when he was seven years old, and approached him every two or three days until he was nine.

Defendant has been charged with solicitation for prostitution in violation of Minn. Stat. § 609.324, subd. 1(2) (1984), for the January 1985 Rochester offense. On April 3, 1985, defendant was convicted of criminal sexual conduct in the second degree in violation of Minn.Stat. § 609.343(a) (1984), for the Austin offense.

Upon receiving notice that the prosecution intended to introduce evidence of these two prior offenses at defendant's trial, the defense brought a motion in limine to have all evidence of prior offenses suppressed. The district court ordered that no evidence of any prior offenses or wrongful acts would be admitted for substantive purposes, but that if defendant testified, evidence of his prior conviction could be introduced for impeachment purposes.

## ISSUES

1. Did the trial court abuse its discretion in suppressing the admission of *Spreigl* evidence regarding the January 1985 offense of solicitation for prostitution?

2. Did the trial court abuse its discretion in suppressing the admission of *Spreigl* evidence regarding the August 1984 offense of criminal sexual conduct in the second degree?

3. Did the trial court abuse its discretion in ruling that defendant's prior conviction of criminal sexual conduct will be admissible for impeachment purposes if the defendant takes the stand?

## ANALYSIS

1. Admission of evidence of other crimes rests in the sound discretion of the trial court and will be upheld absent a clear showing of abuse of discretion. *State v. Ture*, 353 N.W.2d 502, 515 (Minn. 1984). Here, the trial court abused its discretion in suppressing the admission, for substantive purposes, of the January 1985 solicitation for prostitution offense.

Minn.R.Evid. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965), and *State v. Billstrom*, 276 Minn. 174, 149 N.W.2d 281 (1967), the Minnesota Supreme Court set forth specific guidelines for the admissibility of evidence of prior crimes or wrongful acts. In *Billstrom*, the court held that "there must be some relationship in time, location, or modus operandi between the crime charged and the other offenses," 276 Minn. at 178, 149 N.W.2d at 284; and that, while the evidence of defendant's prior offenses need not be proven beyond a reasonable doubt, it

must be clear and convincing. *Id.* at 179, 149 N.W.2d at 285. The "preferred approach" is to

analyze the evidence and determine if the evidence is relevant and material to the state's case, if the evidence of the defendant's participation in the offense is clear and convincing, and if the probative character of the evidence outweighs its potential for unfair prejudice.

*State v. Filippi*, 335 N.W.2d 739, 743 (Minn.1983) (citations omitted).

The trial court based its suppression order on *State v. Clark*, 293 N.W.2d 49 (Minn.1980). The holding in *Clark* is not on point in this case. In *Clark*, the court held that a defendant charged with prostitution may not be cross-examined with regard to previous arrests for and guilty pleas to charges of loitering with intent to solicit for prostitution in violation of a municipal ordinance. The court based its decision on the rationale that a conviction for an ordinance violation has less probative value than a conviction for a misdemeanor or a felony because the punishment for an ordinance violation is relatively light, and the defendant is therefore less likely to exercise his or her constitutional rights and more likely to plead guilty. *Id.* at 51. The court noted that "[n]one of the proper purposes enumerated in Rule 404(b) were material issues in the case * * *. The real issue was credibility." *Id.* at 51–52. In other words, the facts of the offense underlying the conviction were being improperly elicited for impeachment, and not for any proper substantive purpose.

In his ruling, the trial judge did not mention the case of *State v. Woelm*, 317 N.W.2d 717 (Minn.1982), which is more on point than *Clark*. In *Woelm*, the defendant was convicted of prostitution. She argued on appeal that the trial court erred in admitting *Spreigl* evidence concerning the details underlying a previous conviction for prostitution. The supreme court affirmed the conviction. Justice Simonett distinguished *Clark:*

The mere fact that the prior offense was a prostitution offense might not be

enough to justify admission of the evidence of the prior offense in a prostitution prosecution. *State v. Clark*, 293 N.W.2d 49 (Minn.1980). *However, where the similarities between the charged offense and the prior offense are great, the evidence of the prior offense should be deemed admissible if the other tests of admissibility are met.*

In this case the two offenses both occurred within 6 months of each other and on each occasion the undercover police officer, posing as a potential customer, approached the defendant after observing her street-walking in the area of University Avenue and Grotto in St. Paul. In both instances defendant dickered with the officer in much the same way and in both instances defendant directed the officer where to drive. Finally, in both instances defendant tried to talk her way out of it after she was arrested.

*Unlike State v. Clark, 293 N.W.2d 49 (Minn.1980), it is clear that in this case the state offered the evidence for a proper purpose.* Since the evidence was relevant, since the evidence of defendant's participation in the prior offense was clear and convincing, and since the potential of the evidence for unfair prejudice did not outweigh its probative value, we conclude that the trial court properly admitted the evidence.

*Id.* at 718 (emphasis added).

Here, as in *Woelm*, the similarities between the charged offense and the prior offense are great. Both incidents took place within two months of each other in southeast Rochester, Minnesota in the afternoon. In the January incident, the defendant approached two twelve-year-old boys; in the March incident, he approached one eleven-year-old boy. In the January incident, the defendant approached the boys on foot shortly after they had seen him in a brown hatchback car; in the March incident, he drove up to the boy in a brown hatchback car. In both incidents, he offered the boys money—$10 each in the January incident and $30 in the March incident—in exchange for a sexual act. Finally, in both incidents, defendant left the

scene immediately after the boys rejected his offer.

Both incidents are related in time, location, and modus operandi. The similarities between the two incidents are at least as great as, if not greater than, the similarities cited by the court in *Woelm*.

Here, as in *Woelm*, the State offered the evidence for a proper purpose. Defendant's prior offense shows a common scheme, pattern, plan, motive, intent, and absence of mistake or accident. The prior offense is particularly probative of the meaning of the words used by defendant in the incident charged in this case. In the absence of the *Spreigl* evidence, the words "do you know how to come yet," might be considered ambiguous by a jury. In the light of the previous incident, defendant's meaning becomes more clear. *See also State v. Spencer*, 366 N.W.2d 656, 660 (Minn.Ct.App.1985) (evidence of prior sexual misconduct against minors admissible to show a common scheme pursuant to Minn. R.Evid. 404(b)).

Defendant argues that the *Spreigl* evidence of the January incident is not "clear and convincing," as required by *Billstrom*, because the evidence consists only of police reports unsupported by the testimony of any witness or investigating officer. However, contrary to defendant's assertions, it is unclear from the record just what form of evidence the State intends to offer, or whether the State intends to call any witnesses, with regard to the prior offense. Furthermore, the two boys involved in the January incident separately identified the defendant in a photographic lineup as the man who accosted them. This court has held that the identification of the defendant by a victim in a lineup and in court is sufficient to meet the clear and convincing standard. *State v. Dye*, 371 N.W.2d 47, 50 (Minn.Ct.App.1985). Here, there were two separate identifications, one by each victim.

While the photographic lineup identifications meet the clear and convincing standard, admission of the hearsay allegations contained in the police reports, without sup-

porting testimony, would clearly violate the defendant's constitutional right to confront and cross-examine his accusers. *See* U.S. Const. amend. VI (confrontation clause); *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

■ The trial court abused its discretion in suppressing the evidence of the January 1985 Rochester incident. The State, however, must offer more than mere hearsay statements contained in police reports in support of the allegations. Unless the defendant has a meaningful opportunity to confront and cross-examine his accusers with regard to the prior offense, the evidence should be ruled inadmissible.

■ 2. The trial court did not abuse its discretion in suppressing, for substantive purposes, evidence of the Austin incident which led to defendant's conviction for second degree criminal sexual conduct. There is no relationship in time, place, or modus operandi between the prior offense and the offense charged here. *See Billstrom*, 276 Minn. at 178, 149 N.W.2d at 284. The only similarity between the two offenses is that both involve sexual misconduct with young boys. The extreme prejudicial impact of this evidence clearly outweighs its probative value, Minn.R.Evid. 403, and raises the danger that the defendant will be found guilty, not because the State has proven him guilty of the crime charged, but "because he is a likely person to do such acts." 1 Wigmore, Evidence §§ 193, 194 (3d ed.), *quoted in Spreigl*, 272 Minn. at 496, 139 N.W.2d at 172. Evidence of a defendant's character is not admissible to show that he acted in conformity therewith on a particular occasion. Minn.R.Evid. 404.

■ 3. Defendant was convicted of criminal sexual conduct for the Austin incident. The trial court did not abuse its discretion in ruling that this conviction would be admissible for impeachment purposes if defendant took the stand.

Minn.R.Evid. 609(a) provides:

For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, or (2) involved dishonesty or false statement, regardless of the punishment.

Defendant argues that the trial court's ruling was an abuse of discretion because the crime for which defendant was convicted, second degree criminal sexual conduct, does not bear on his veracity or credibility. Rule 609 does not, however, require that the prior conviction involve dishonesty or false statement where the crime is punishable by imprisonment in excess of one year. Criminal sexual conduct in the second degree is punishable by imprisonment for not more than 15 years. Minn.Stat. § 609.-343(a) (1984).

Defendant also argues that the probative value, for impeachment purposes, of this evidence is outweighed by its prejudicial effect. While this argument is not without merit, the admissibility of this evidence for impeachment was within the trial court's sound discretion, and the court's ruling here does not constitute an abuse of that discretion.

## DECISION

1. The trial court's ruling that the *Spreigl* evidence of the January 1985 solicitation for prostitution offense is inadmissible for substantive purposes is reversed.

2. The trial court's ruling that the *Spreigl* evidence of the prior offense of criminal sexual conduct is inadmissible for substantive purposes is affirmed.

3. The trial court's ruling that the State may use defendant's prior conviction to impeach him if he takes the stand is affirmed.

Affirmed in part, reversed in part, and remanded.