STATE of Minnesota, Respondent,

v.

Elio Miguel Rivera MARQUETTI,
Appellant.

No. 81–713.

Supreme Court of Minnesota.

July 23, 1982.

William R. Kennedy, County Public Defender, and David Knutson, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief, Appellate Section,

Thomas A. Weist and Rick Osborne, Asst. County Attys., and Beverly J. Wolfe, Staff Atty., Minneapolis, for respondent.

OTIS, Justice.

Defendant was found guilty by a district court jury of charges of aggravated robbery and burglary, Minn.Stat. §§ 609.245, 609.58, subd. 2(1)(b), 609.05 and 609.11 (1980). There was a disagreement over what defendant's criminal history score should be. Defendant contended that it should be zero. The trial court decided that defendant's criminal history score was one and on that basis imposed the presumptive sentence of 32 months in prison for the robbery conviction. The court also imposed a concurrent 26-month term for the burglary but stayed its execution and placed defendant on probation for 10 years.

On this appeal from judgment of conviction, defendant seeks a new trial on the ground that he was prejudiced by the admission of evidence that he was arrested the previous year for possession of a gun and by certain statements made by the prosecutor in his closing argument. Alternatively, he seeks a reduction of his sentence length on the ground that his criminal history score should have been zero, not one. We affirm defendant's convictions but reduce defendant's sentence for the robbery from 32 months to 24 months.

The victim of the crimes had acted as a sponsor in helping in 1980 to relocate Nelson Rodrigues, a Cuban refugee who had been confined at Fort McCoy in Wisconsin. On March 23, 1981, two other Cuban refugees forced their way into the victim's apartment and robbed him.

Suspecting that Rodrigues was involved as an accomplice to the crimes, the victim directed the police to the rooming house where Rodrigues and a number of other Cuban refugees lived. There police observed four male Cubans walking towards the house. Two of the men fit the description of the robbers and one of the other two was carrying a shopping bag which later was identified as a bag taken in the robbery. Two of the four men stopped when ordered to do so, but the other two fled into the house with the police giving chase. Defendant was caught inside the house hiding behind the refrigerator in the kitchen. In his pocket were several items taken in the robbery, and near him was a loaded .22-caliber pistol later identified as a weapon used in the robbery. The victim, who was brought to the scene, identified defendant as one of the robbers. He also identified defendant at trial.

1. Defendant makes a number of arguments in connection with the prosecutor's cross-examination of defendant concerning his possession of a gun in 1980 and in connection with the admission of the gun in evidence.

This gun was a .22-caliber pistol taken from defendant in 1980 following his arrest for illegally possessing the gun. The gun was different from the one found near defendant when he was arrested but was structurally identical.

Defendant's first contention is that it was improper for the prosecutor to question him at all about his having possessed the gun in 1980. However, defense counsel did not object to this cross-examination and therefore forfeited defendant's right to have this court consider the issue on appeal.

Defense counsel did object to the admission of the gun possessed in 1980, claiming that it was irrelevant and prejudicial and that since defendant admitted having possessed the gun there was no need to admit it into evidence. However, the prosecutor demonstrated that the gun was relevant, in that it was structurally identical to the gun used in the robbery and found near defendant when he was arrested, and necessary, because defendant denied having had any contact with the gun found near him. In short, the evidence tended to further connect defendant to the gun found behind the refrigerator and thereby connect him to the robbery. It showed, as the prosecutor would later argue in closing argument, that

that kind of gun was defendant's weapon of choice. The issue for the trial court was whether the evidence tended to connect defendant to the crime or was only admitted to create unfair prejudice to the defense. *State v. Webber*, 292 N.W.2d 5 (Minn.1980). The trial court properly concluded that the evidence tended to connect defendant to the crime.

■ The evidence also tended to impeach defendant's credibility. In his taped statement to police, which the prosecutor knew defense counsel intended to introduce, defendant denied that he had ever possessed a gun in Minneapolis. Defense counsel implicitly argued that this was not a basis for admitting the gun because defendant admitted on cross-examination that he had possessed a gun in 1980, thereby obviating the need for admitting the gun. However, since the gun was also being admitted as evidence independently tending to connect defendant to the gun found behind the refrigerator, we believe that the trial court properly rejected the defense argument.

Defendant also argues that the prosecutor should have given him notice in advance of trial that he intended to rely on this evidence. Defendant did not make this argument at trial and therefore the issue should be deemed forfeited.

■ 2. Defendant next challenges the fairness of the prosecutor's closing argument. Defendant points primarily to a number of statements by the prosecutor concerning the evidence that defendant possessed a gun in 1980 which was structurally identical to the gun found near defendant when he was arrested. We believe that these were reasonable arguments based on the evidence and that the prosecutor did not violate the rule against expressing his personal opinion. Defense counsel's failure to object to the arguments suggests that he did not find any fault with them. Furthermore, it provides a basis for concluding that this issue should be deemed forfeited.

3. Defendant's final contention is that the trial court improperly assigned defendant a criminal history score of one instead of zero. In computing the presumptive sentence the court used a Cuban burglary conviction from 1972 based on defendant's act of stealing chickens at age 16.

Under the Sentencing Guidelines a defendant is given one criminal history point for every felony conviction for which a sentence was stayed or imposed and that occurred before the current sentencing. Minnesota Sentencing Guidelines and Commentary, II.B.101 (1981). There is a 10-year staleness test but that period does not start to run until the date of discharge from or expiration of the sentence. Thus, since defendant was discharged within the 10-year period preceding the sentence, the 1972 Cuban conviction counts as one point if it may be deemed to be a felony conviction.

Whether it may be deemed to be a felony conviction is considered in the Guidelines following section II.B.4. The Guidelines there provide that "The designation of out-of-state convictions as felonies, gross misdemeanors, or misdemeanors shall be governed by the offense definitions and sentences provided in Minnesota law." Comment II.B.501. provides that "Out-of-state convictions include convictions under the laws of any other state, or the federal government, including convictions under the Uniform Code of Military Justice." Comment II.B.504. provides that "It was contemplated that the sentencing court, in its discretion, should make the final determination as to the weight accorded foreign convictions. In so doing, sentencing courts should consider the nature and definition of the foreign offense, as well as the sentence received by the offender."

Defendant argues that since he was only 16 at the time of the offense in Cuba, it should not be used in the computation since defendant is now over 21. This argument apparently refers to the rule in section II.B.4. concerning use of juvenile adjudications. If that rule had been used, it would have taken two adjudications to make one criminal history point. However, the rule was not relied upon. Rather, the state contended in the trial court that the 1972 conviction was an adult felony conviction.

We must focus, then, on whether the conviction of a 16-year old in Cuba of the offense of burglary may be used as a felony conviction in computing the criminal history score of that person for an offense committed in Minnesota when he was 26 years old.

█ Generally, 16-year olds are not prosecuted as adults for burglaries in Minnesota and the defendant should not be given one point for a conviction occurring when he was 16 unless he would have been prosecuted as an adult in Minnesota under the same circumstances. Whether or not the conviction should be useable as a felony conviction in such circumstances depends on who had the burden of proof. We believe that the state had the burden of proof on this issue and that it failed to meet that burden of proof. Accordingly, defendant's criminal history score should have been zero rather than one and he therefore is entitled to have his sentence for the robbery reduced from 32 months to 24 months.

Convictions affirmed; sentence reduced.

WAHL, J., took no part in the consideration or decision of this case.