**STATE of Minnesota, Respondent,**

v.

**Edwin Lovette SPENCER, Appellant.**

**No. C8–84–1387.**

Court of Appeals of Minnesota.

April 30, 1985.

Review Denied July 11, 1985.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Thomas K. Overton, Sp. Asst. Attys. Gen., St. Paul, John E. Pearson, Becker County Atty., Detroit Lakes, for respondent.

Lisa Gram Gustafson, Houge and Gustafson, Brooklyn Center, for appellant.

Heard, considered and decided by CRIPPEN, P.J., and PARKER and WOZNIAK, JJ.

## OPINION

PARKER, Judge.

This is an appeal from a conviction of intrafamilial sexual abuse in the first degree. Appellant Edwin Spencer claims his conviction should be reversed because certain evidence was improperly admitted, he was denied due process, and he was denied effective assistance of counsel. We affirm.

## FACTS

Spencer was charged with intrafamilial sexual abuse in the first and second degrees. The complainant, his 13-year-old daughter (A.S.), alleged he had sexual intercourse with her.

At trial A.S. testified that for nearly three months Spencer frequently entered her bedroom, touched her breasts and genital area, and penetrated her vagina with his finger. She testified he once had oral contact with her genitals and on another occasion had sexual intercourse with her. A.S. also said he fondled her at various other times and locations.

A.S. testified that her father threatened her with beatings to keep her silent and that her step-mother, Karen, threatened to kill her if she did anything to cause Spencer's removal from the home.

A physician testified that A.S. had an unusually large vaginal opening for a girl her age and that the most common cause of this would be sexual penetration.

Both Spencer and the State elicited testimony from several witnesses about Spencer's harsh disciplinary practices. Testimony was introduced that on one occasion Karen Spencer cut holes out of the back of A.S.' blue jeans. Both Karen Spencer and her husband subsequently drew on A.S.' buttocks as a disciplinary measure and forced the girl to display herself to family members and neighbors.

Another of Spencer's minor daughters and a minor neighbor girl each testified that Spencer had had sexual contact with them.

Spencer denied the allegations and argued to the jury that A.S. had fabricated her story because she hated her father and wanted to escape from an unpleasant home environment.

Spencer was found guilty of intrafamilial sexual abuse in the first degree in violation of Minn.Stat. § 609.3641 (1984).

## ISSUES

1. Did the trial court err in admitting evidence that Spencer's wife participated in certain bad acts involving A.S.?

. 2. Did the trial court err in allowing testimony that Spencer had had sexual contact with young girls other than A.S.?

3. Did the trial court err in allowing testimony of Spencer's disciplinary practices?

4. Is Spencer entitled to a new trial because his counsel did not attempt to rebut the State's medical testimony by cross-examining A.S. regarding previous sexual conduct?

5. Was Spencer denied effective assistance of counsel?

## DISCUSSION

### I

Spencer claims testimony that Karen Spencer once disciplined A.S. by drawing on the child's body and that she threatened to kill A.S. was inadmissible under Minn.R. Evid. 608 because those incidents do not relate to Mrs. Spencer's character for truthfulness.

■ We agree with the State that evidence of her participation in the disciplinary incident was admissible as an inseparable part of the second-degree sexual abuse charge against Spencer. Second-degree sexual abuse involves sexual contact with a child. *See* Minn.Stat. § 609.3642, subd. 1 (1984). Sexual contact is defined to include the intentional touching of a child's buttocks if the act "can reasonably be construed as being for the purpose of satisfying the actor's sexual or aggressive impulses." Minn.Stat. § 609.364, subds. 8 and 13 (1984).

At trial the prosecution argued that this incident constituted second-degree intrafamilial sexual abuse because Spencer drew on A.S.' buttocks to satisfy his aggressive impulses. Mrs. Spencer's participation was an integral part of the incident, since it would be impossible to accurately relate it without referring to her role. The State may prove all relevant facts and circumstances which tend to establish any of the elements of the offense charged. *See State v. Wofford*, 262 Minn. 112, 118, 114 N.W.2d 267, 271 (1962). Evidence of Mrs. Spencer's participation in this incident was also admissible to explain why A.S. did not go to her for protection from Spencer.

■ Testimony that Mrs. Spencer threatened to kill A.S. if the child caused Spencer's removal from the home was given by A.S. during the State's case-in-chief and also by A.S.' sister on rebuttal. The testimony was not introduced as character evidence. The State knew before trial that Spencer's defense was fabrication. Even though evidence explaining A.S.' tardiness in reporting the abuse was not statutorily required, it was material to overcome the fabrication defense. The evidence was thus admissible to corroborate A.S.' testimony and to explain why A.S. did not go to Mrs. Spencer for help and delayed reporting the abuse to others.

### II

The State was permitted to introduce evidence of alleged acts of criminal sexual misconduct committed by Spencer on two other minor female children. The State elicited testimony from Spencer's neighbor that Spencer fondled her breasts while she was riding alone with him in his truck. This allegedly occurred when the girl was 13 years old, three years before the current charges. In addition, another of Spencer's daughters testified that he grabbed her between the legs while wrestling with her, around the same time as A.S.' allegations occurred. Spencer was never charged in connection with these acts.

■ Admission of evidence of other criminal acts rests in the sound discretion of the trial court and will be upheld unless there is a clear showing of an abuse of discretion. *State v. Ture*, 353 N.W.2d 502, 515 (Minn.1984).

■ Evidence of prior sexual misconduct in cases involving sex crimes against minors is admissible to show a common scheme pursuant to Minn.R.Evid. 404(b):

Evidence of other crimes is admissible if the evidence of the defendant's participation in the other crimes is clear and convincing, if the evidence is relevant and material to the state's case, and if the probative character of the evidence outweighs its potential for unfair prejudice. * * * Regardless of the purpose for which the evidence is admitted, there must be some relationship in time, location, or modus operandi between the crime charged and the other crimes, and further, the evidence must be needed.

*Ture v. State,* 353 N.W.2d 518, 521 (Minn. 1984).

■ We observe that there are many similarities between the crimes charged and the misconduct alleged. Both involved female children near A.S.' age. The misconduct against the sister occurred at the same time as the crimes charged and involved another of Spencer's daughters. Moreover, the alleged misconduct against the neighbor's daughter included touchings similar to some alleged by A.S. The trial court did not abuse its discretion in admitting the evidence.

■ At oral argument Spencer asserted that he had received no notice of the prosecution's intent to produce this evidence. The district court file reveals, however, that transcripts of statements given by both girls, which included the allegations of sexual contact, were given to Spencer during discovery. In addition, the names of the girls were included on the State's witness list. Hence, the evidence was not a surprise to Spencer.

### III

■ Testimony was introduced that Spencer used harsh and offensive disciplinary measures with all of the children. It is common for intrafamilial sexual abuse to be masked as discipline, and allegations that discipline has overtones of intrafamilial sexual abuse are similarly common. This leaves the trial court in a difficult

posture with regard to the admission of evidence concerning discipline. It behooves the trial court to admit such evidence as long as the probative value is not outweighed by prejudice. *See* Minn.R. Evid. 403.

■ In this case the trial court had good reason to allow testimony regarding Spencer's disciplinary methods. The record shows the State initially introduced testimony, to explain the nature of Spencer's threat to beat her and why she did not seek help immediately, that Spencer had beaten A.S. with a canoe paddle in the past. The evidence was admissible to show the quandary in which the child found herself.

It is also apparent that this evidence was an important part of Spencer's trial strategy. Spencer sought to prove that A.S. fabricated her story in part to avoid living in the home of a harsh disciplinarian. The record supports the State's position that Spencer introduced extensive evidence of his disciplinary methods as part of his strategy and not just in response to the State's evidence.

Thus, the trial court did not err in admitting testimony of Spencer's disciplinary methods elicited by both sides.

### IV

■ Spencer argues that the testimony of the State's physician witness was highly prejudicial because from it the jury could only conclude that Spencer had sexually penetrated A.S. Spencer's attorney did not object to this testimony and did not move to cross-examine A.S. about her previous sexual conduct under Minn.Stat. § 609.347, subd. 3 (1984). Because such rebuttal evidence was not placed before the jury, Spencer claims his rights to due process, to confront his accusers, and to offer evidence in his own defense were violated. Even though he failed to object at trial, Spencer argues the court should grant him a new trial because failure to do so would "perpetuate a substantial injustice in the sense that an innocent person may have been convicted." *State v. Heidelberger,* 353 N.W.2d 582, 587 (Minn.Ct.App.1984).

Spencer has not shown he has suffered substantial injustice. On cross-examination he established that the doctor was testifying only about the size of the vaginal opening; that up to five percent of girls A.S.' age had openings of comparable size; and that numerous causes could explain the finding. Moreover, Spencer elicited testimony from his wife that he thought A.S. was pregnant by a neighbor boy.

The record contains no offer of proof of the existence of evidence favorable to him which would have been disclosed through cross-examination of A.S. Furthermore, it is unlikely that Spencer would have succeeded in the suggested motion. Minn. Stat. § 609.347, subd. 3, allows the court to admit the following proposed evidence if it is material and its prejudicial nature does not outweigh its probative value:

(a) When consent or fabrication by the complainant is the defense in the case, evidence of such conduct tending to establish a common scheme or plan of similar sexual conduct under circumstances similar to the case at issue on the part of the complainant, relevant and material to the issue of consent or fabrication. Evidence of such conduct engaged in more than one year prior to the date of alleged offense is inadmissible;

(b) Evidence of specific instances of sexual activity showing the source of semen, pregnancy, or disease at the time of the incident or, in the case of pregnancy, between the time of the incident and trial;

(c) Evidence of the complainant's past sexual conduct with the defendant;

(d) For purposes of impeachment, when such evidence is offered to rebut specific testimony of the complainant.

The statute stringently limits the circumstances under which such examination is allowed, none of which appear to be present in this case. Spencer has not shown prejudice such as to cause this court to intervene despite his failure to object.

## V

Spencer contends he was denied his sixth amendment right to effective assistance of counsel. In *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court articulated the standards to be used in determining effectiveness of counsel:

The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

\*　　\*　　\*　　\*　　\*　　\*

[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.

*Id.* at ——, 104 S.Ct. at 2064, 2065. Even when an attorney has made an error that is professionally unreasonable, a conviction cannot be overturned unless the appellant also shows "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at ——, 104 S.Ct. at 2068.

Spencer charges that his attorney spent less than two hours talking to him about the charges and did not interview any of the defense witnesses before they testified. He also claims his attorney failed to protect his constitutional rights by not objecting to the testimony of the State's medical witness and failing to make a § 609.347 motion.

The record contains no indication that defense counsel's preparation was inadequate. The case was fully investigated, witness statements were taken, and complete discovery was obtained.

As discussed above, the failure of Spencer's attorney to object to the State's medical testimony and make a § 609.347 motion could easily have been trial tactics, which we are not in a position to criticize, nor do we consider these acts to be grounds for finding Spencer's former counsel rendered ineffective assistance.

## DECISION

Evidence was properly admitted. There was no denial of due process of law by the

court's failure to intervene in the absence of an objection to certain evidence. The record does not support the allegation of ineffective assistance of counsel.

Affirmed.