**STATE of Minnesota, Respondent,**

v.

**Michael Elliot WRIGHT, Appellant.**

**No. C3–84–2222.**

Court of Appeals of Minnesota.

July 16, 1985.

Review Denied Sept. 13, 1985.

Hubert H. Humphrey, III, Atty. Gen., Thomas Foley, Ramsey Co. Atty., and Steven C. DeCoster, Asst. Co. Atty., St. Paul, for respondent.

C. Paul Jones, State Public Defender, Kathy King, Asst. Public Defender, University of Minnesota, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and NIERENGARTEN and RANDALL, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

Michael Wright appeals his conviction for two counts of assault in the second degree, Minn.Stat. § 609.222 (1984), two counts of false imprisonment, Minn.Stat. § 609.255 (1984) and one count of unlawful possession of a pistol, Minn.Stat. § 624.713, subds. 1(b) and 2 (1984). He claims he was denied a fair trial by prosecutorial misconduct in closing argument and examination of a State's witness. We affirm.

## FACTS

On May 12, 1984, Wright and his three year old son came to Minnesota from California to live with Wright's step-mother, Wilma Wright, in her mobile home. Wright's father died in 1983. Wright was upset that his father left everything to his step-mother.

Wilma's husband kept unloaded .22 and .38 handguns in his desk in the office of the mobile home. Wilma put the guns in the bottom of a chair.

On June 2, 1984, Steven Wood, a long time friend of Wilma and her husband, came to visit with his friend John Murry. Wilma and Wood discovered a paper bag in the office containing the .22 fully loaded. As the gun was being unloaded Wright grabbed it away.

When Wilma reached for the gun Wright pushed her aside and said: "This shit is going to cease, you fucked me over long enough and I am going to kill you, bitch, and get rid of my misery." He said to Wood, "Steve, I am sorry you got lined up with this broad, but this bitch is going to die." Wright cocked the gun and ordered Wilma and Wood to sit on the floor. He repeatedly pointed the gun at Wilma threatening to kill her, complaining that his father and Wilma were the cause of all his troubles (Wright had several felony convictions in California) and stated he had been mistreated as a child and that he did not get any inheritance. He smashed pictures of his father which had been hanging on the wall. He also ordered Murry to come in from the living room and sit down. Wright continued to hold the gun and complain about his treatment as a child—he complained that he had been beaten as a child, starved and forced to steal. At one point Wright held the gun near Wood's left

ear and fired a shot. The shot did not hit Wood but went into the wall.

After Wright had held the three captive for about four hours, his son screamed because he had wood ticks on him. Wood used this diversion to suggest they all go to a pancake restaurant to eat. They drove to the restaurant in separate cars. Wilma testified that Wright had earlier threatened to kill everyone if a cop pulled up in front of the house and that they feared that if they did not show up at the restaurant, Wright would hurt innocent people. After eating dinner, Wright apologized to Wood. Wilma, Wood and Murry then left and went to the police who then went to the mobile home and found Wright cooperative.

Wright was held competent to stand trial following a Rule 20 hearing and was convicted of assault in the second degree and false imprisonment of Wilma and Wood. He was acquitted of similar charges against Murry. He was also convicted of unlawful possession of a gun. He was sentenced to two concurrent 60 month prison terms for the assaults under the mandatory minimum statute, Minn.Stat. § 609.11 (1984); no sentence was imposed for the other convictions.

### ISSUE

Was appellant prejudiced by claimed prosecutorial misconduct?

### ANALYSIS

Wright's claimed prosecutorial misconduct in closing argument is specified in our following response to each claim.

■■■ 1. The prosecutor stated that if the jury "believed the State has proved its case by proof beyond a reasonable doubt, as the court has defined to you, then the presumption of innocence vanishes * * *." This statement did not distort the burden of proof by calling the presumption of innocence a procedural device to insure a jury stays open to receive all of the evidence. Besides, Wright failed to object, and has thus forfeited his right to have this issue

considered on appeal. *State v. Marquetti,* 322 N.W.2d 316, 318 (Minn.1982).

■ 2. Wright claims defense counsel was demeaned by the prosecutor's use of a story narrated by the prosecutor to highlight the fact that defense counsel concentrated his cross-examination of the victims on events at the pancake restaurant, thereby putting up a "smoke screen" on the real events that occurred in the mobile home. The prosecutor was free to comment on the failure of defense counsel to ask questions about the four hours at the mobile home in order to preserve the credibility of the witnesses' testimony. *State v. Parker,* 353 N.W.2d 122, 128 (Minn.1984); *State v. Johnson,* 359 N.W.2d 698, 702 (Minn.Ct. App.1984).

3. Wright also challenges the prosecutor's examination of Wilma Wright. During the examination the following occurred:

Q. Okay. Why don't you tell us what happened next.

A. Michael started talking about how his father beat him everyday as he was a child, how he was mistreated, how they had starved he and his sisters, and I called him a liar. It seemed that when they got home from school and they would watch television and they would see—

Mr. Williams: I am going to object as not relevant to these proceedings.

The Court: Sustained.

A. Whatever. Anyway, after school it seemed that—after school Michael said he was hungry, or the girls said they were hungry—

Mr. Williams: Objection, nonresponsive.

The Court: Sustained.

Q. (By Mr. Plesha, continuing:) Are those things that Michael had told you that you were doing?

A. Yes, this is what Michael said he had done. When they got home from school they were hungry and he wanted snacks, and he would go and steal them because they were hungry.

Mr. Williams: Your Honor, I don't think it is relevant to the proceedings.

In chambers, the trial court cautioned the prosecutor that specific incidents need not be elicited because they were irrelevant, collateral and prejudicial. The trial court precluded any further testimony of specific criminal conduct and restricted the prosecutor to elicit general statements about what Wright indicated his concerns were.

Wright claims the reference to his juvenile conduct (stealing snacks because he was hungry) was prejudicial. The brief reference to stealing snacks as a child was not a prejudicial reference to Wright's character warranting a new trial. In fact, the trial court's ruling unduly restricted the prosecutor from presenting evidence relevant to Wright's *intent* to commit the crimes. Intent is an element of assault in the second degree and false imprisonment. The victims' subsequent acts in going to a pancake restaurant with Wright were more comprehensible when Wright's statements reflecting his extreme resentment and rage over his treatment as a child were elicited. *See State v. Black*, 291 N.W.2d 208, 214–15 (Minn.1980). The defense theory was that the victims' story that a weapon was pointed at the victims for four hours, and then they would say, "Let's go get a table for six at Perkins," was too incredible to be believed and did not make any sense. The evidence was relevant to show the quandry in which the victims found themselves, and to overcome the fabrication defense by explaining any tardiness in reporting the offense. *See State v. Spencer*, 366 N.W.2d 656, 660 (Minn.Ct.App.1985).

Wright personally raises a number of additional issues. In response we note the following: (1) Wright's *Miranda* rights were not violated; (2) Wright was found competent to stand trial after a Rule 20 hearing; and (3) Wright was not denied effective assistance of counsel.

### DECISION

Wright's convictions are affirmed.

Affirmed.