STATE of Minnesota, Respondent,

v.

Larry CASADY, Appellant.

No. C6–86–372.

Court of Appeals of Minnesota.

Aug. 26, 1986.

Review Denied Sept. 24, 1986.

Hubert H. Humphrey, III, Atty. Gen., Robert M.A. Johnson, Anoka Co. Atty., Marcy S. Crain, Asst. Co. Atty., Anoka, for respondent.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by FOLEY, P.J., and HUSPENI and CRIPPEN, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

A jury found appellant, Larry Casady, guilty of three counts of criminal sexual conduct in the first degree. The trial court sentenced Casady to a term of 116 months on one count. This was double the presumptive sentence. On appeal, Casady argues that: (1) there is insufficient evidence to sustain his conviction; (2) the trial court abused its discretion when it admitted *Spreigl* evidence; (3) the trial court abused its discretion by refusing to admit into evidence sexually explicit magazines; (4) the prosecutor's misconduct during closing argument constituted reversible error; and (5) the trial court's upward durational departure in sentencing was not justified. We affirm.

## FACTS

This case arose from allegations by J.C. that her father, Larry Casady, had been engaging in sexual acts with her for the past seven or eight years. She stated that for many years Casady had a drug and alcohol problem which made him violent. Because of this violent behavior she was afraid of him and afraid to tell anyone about the abuse.

Finally in August 1985, J.C. told a neighbor about the abuse. At the encouragement of the neighbor J.C. also told her mother about the abuse. As a result of this disclosure, J.C. was sent to live with her aunt, Margaret Brynteson.

At trial, Brynteson testified that about thirteen years ago when she was thirteen years old Casady came into her bedroom and offered to give her all the change in his pocket if she would have oral sex with him. She refused and Casady never approached her again. Brynteson never told anyone about this incident until she talked to a social worker who was involved in J.C.'s

case. Unfortunately, the social worker failed to promptly disclose this information to the prosecuting attorney. One day before trial was to begin, the prosecuting attorney discovered Brynteson's evidence and notified defense counsel that he would seek to introduce it at trial as "Spreigl"[1] evidence. The trial court held no hearing or interview out of the jury's presence to determine whether Brynteson's proposed testimony would constitute clear and convincing evidence of Casady's involvement with her.

J.C. testified that two other family members had witnessed the sexual abuse against her. One witness was her 11 year-old brother L.C. J.C. said that L.C. had walked into the bedroom when Casady was having sex with her. She said L.C. just turned and walked out when he saw them. Casady told her to go warn L.C. not to tell anyone and she did as he instructed.

At trial L.C. testified that when he walked in the bedroom J.C. was sitting on the floor covered in a quilt while Casady was on the bed undressed. L.C. said he was angry at J.C. and blamed her for the family breaking up. His testimony at trial differed from the statement he gave to investigators and L.C. said he had lied in his earlier statement. In that earlier statement he stated he saw J.C. and Casady on the bed undressed and "making out."

L.C. also testified that he had looked at dirty magazines which were kept in the house. He testified that J.C. looked at the magazines a lot. J.C. acknowledged the magazines were in the house but denied ever looking at any of them.

J.C.'s 15 year-old cousin J.L. also testified at trial stating that one day Casady called him into the house and told him to look in the bedroom. When J.L. looked in he saw J.C. naked to the waist and crouched over on the bed.

Dr. Carolyn Levitt examined J.C. and testified that her emotional and physiological responses were consistent with having been sexually abused.

Casady testified and denied all the allegations of abuse. He stated that everyone was involved in a frame-up. He admitted, however, that he was a recovered alcoholic and drug abuser and that J.C. has seen him exhibiting violent behavior.

## ISSUES

1. Is there sufficient evidence to support the jury's verdict?

2. Did the trial court abuse its discretion when it excluded evidence of sexually explicit magazines?

3. Did the trial court abuse its discretion by admitting *Spreigl* evidence?

4. Did the prosecutor's statements in his closing argument constitute reversible error?

5. Did the trial court abuse its discretion by making an upward durational departure in sentencing?

## ANALYSIS

### I.

Casady claims that the evidence is not sufficient to support the jury's verdict. We disagree. Jury verdicts are presumed to be correct. Only where there is no reasonable evidence to sustain the verdict will this court reverse. *State v. Norgaard*, 272 Minn. 48, 52, 136 N.W.2d 628, 631–32 (1965). When reviewing a claim of insufficient evidence, this court must view the evidence in the light most favorable to the State and assumes the jury believed the State's witnesses and disbelieved any contradictory evidence. *State v. Parker*, 353 N.W.2d 122, 127 (Minn.1984). Under this standard there was ample evidence from J.C., Dr. Levitt and other witnesses to support the jury's verdict.

### II.

Casady claims the trial court abused its discretion when it excluded evidence of sexually explicit magazines kept in his home. The record, however, contains no

1. *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965).

attempt by defense counsel to offer such evidence, no ruling by the trial court, and no offer of proof. Under the circumstances Casady's claim of error cannot be reviewed for the first time on appeal. *See State v. Blackbull,* 375 N.W.2d 71, 73 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn.Dec. 19, 1985).

### III.

The trial court admitted *Spreigl* evidence that approximately thirteen years earlier Casady had approached Margaret Brynteson and offered her money to engage in sexual acts. Casady contends the trial court abused its discretion by admitting this evidence. We agree.

The decision to admit evidence of other bad acts rests largely within the discretion of the trial court. *State v. Campbell,* 367 N.W.2d 454, 460 (Minn.1985). To be admissible the evidence should be relevant and material to the State's case, the probative value of the evidence should outweigh the potential for unfair prejudice, and the defendant's participation in the offense should be clear and convincing. *State v. Filippi,* 335 N.W.2d 739, 743 (Minn.1983). In addition Minn.R.Crim.P. 7.02 requires that for certain offenses the State must give advance notice to the defense of its intent to use the evidence.

■ Rule 7.02 provides in part:

The prosecuting attorney shall notify the defendant or his counsel in writing of any additional offenses, the evidence of which may be offered at the trial under any exceptions to the general exclusionary rule. * * * If no pretrial conference is held, then the notice shall be given at least seven (7) days before trial *or as soon thereafter as known to the prosecuting attorney.*

(Emphasis added.) There should have been better communication between the prosecuting attorney and other personnel working on this case. However, there is no evidence in the record to suggest that the prosecuting attorney unduly delayed in notifying defense counsel of the intent to offer the *Spreigl* evidence of Brynteson.

Further, Brynteson was present at trial and defense counsel had the opportunity to cross-examine her. Also Casady had the opportunity to testify and deny the allegation. *See State v. Southard,* 360 N.W.2d 376, 383 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. April 12, 1985). Under these facts we cannot say the trial court abused its discretion by admitting the *Spreigl* evidence with only one day prior notice.

■ Timely notice is only one criteria for the admission of *Spreigl* evidence, however, and we find the trial court's application of the other criteria far more troublesome. Before *Spreigl* evidence may be admitted at trial there must be clear and convincing proof of the defendant's participation in the alleged offense. In the present case the only proof the trial court had of the alleged incident was the prosecuting attorney's assertions of what Brynteson's testimony would be. Even though the State indicated Brynteson was available to be examined at a hearing on the *Spreigl* evidence, the trial court did not avail itself of this opportunity to judge the credibility of the witness.

■ We recognize that the trial court has broad discretion in determining whether or not to require the State to call a *Spreigl* witness to testify at a hearing to determine the admissibility of *Spreigl* evidence. *State v. Lindahl,* 309 N.W.2d 763, 766 (Minn.1981). In this case, however, it was an abuse of discretion not to do so. The alleged incident occurred thirteen years earlier and was never reported to anyone until shortly before trial. The only evidence that this incident occurred was the testimony of the witness herself. "[I]t is the function of the trial court to weigh the credibility of a witness appearing before it." *State v. Doughman,* 384 N.W.2d 450, 455 (Minn.1986). In these circumstances it was an abuse of discretion for the trial court not to take the opportunity to weigh the credibility of this *Spreigl* witness.

■ Further, any connection between the alleged *Spreigl* incident and the charged offense was far too tenuous to meet the relevancy requirement. The time between the two incidents was considerable. The alleged incident with Brynteson occurred thirteen years ago while the incidents with J.C. began some seven or eight years ago, so there was at the least five or six years between the two incidents. There was no significant similarity in place. Nor was there any significant similarity in the modus operandi. The only similarity between the two incidents is that they involved sexual misconduct with young females. In light of the facts of this case, this was not enough to meet the relevancy requirement. *See State v. Nutt*, 381 N.W.2d 480 (Minn.Ct.App.), *pet. for rev. denied*, (Minn. Mar. 27, 1986).·

■ Having determined that the trial court erred in admitting the *Spreigl* evidence, we must further determine whether that admission constituted reversible error. Upon a thorough review of the record we conclude that it did not. There was substantial evidence other than the *Spreigl* evidence, upon which the jury could base its verdict. The *Spreigl* witness was available at trial for cross-examination. The *Spreigl* evidence was not the focal point of the State's case, nor of its closing argument. Further, defense counsel was free to argue the relevancy of that evidence. *See Filippi*, 335 N.W.2d at 744 fn.1. In its final instructions the trial court gave a cautionary instruction on the use of *Spreigl* evidence. Defense counsel refused the trial court's offer to give a similar cautionary instruction at the time the evidence was admitted. In view of these circumstances and the presence of substantial properly admitted testimony indicating Casady's guilt, we find the error in admitting the *Spreigl* evidence was harmless and does not require a new trial.

### IV.

Casady argues that the prosecutor's closing argument contained several instances of misconduct that constituted reversible error. The record shows that defense counsel made no objections during the prosecution's closing argument. Afterwards, in chambers, defense counsel only objected to what he deemed the prosecutor's comment on the defense's failure to call witnesses. Such a comment would clearly be improper. *See State v. Caldwell*, 322 N.W.2d 574, 589–90 (Minn.1982).

During his opening statement, defense counsel indicated that he would be calling Casady's wife as a witness and that she would testify that J.C. admitted to her that the allegation that Casady forced J.C. to expose herself to J.L. was untrue. Mrs. Casady did not testify at trial.

■ In his closing argument the prosecutor stated:

Now, think back to the beginning of this trial during the opening statements. The defense attorney, Charlie Rogers, told you in his opening statement that the evidence was going to show, and Mother would testify, that a couple weeks ago she spoke to [J.C.] on the phone and [J.C.] admitted to her that she had lied about this [J.L.] incident.

Well, [J.C.] testified, said that was totally untrue, that she never said that that was a lie. And that's because it's not a lie; it's the truth.

Something to keep in mind: What I told you during opening statement isn't evidence, is not evidence, and what the defense attorney tells you the evidence is going to be in opening statement is not evidence. The evidence in this case is what you heard from that witness chair.

And let's make sure everyone's clear on this point: There was no evidence admitted in this case establishing that [J.C.] has ever lied about anything. No evidence that [J.C.] ever called her mother two weeks ago and admitted lying about anything, much less this [J.L.] incident, regardless of what was told you in opening statement.

Commenting on the defense's failure to call witnesses is improper. *See Caldwell*, 322 N.W.2d at 589–90. However, the prosecu-

tor's remarks could also be characterized as comments on the paucity of evidence to support the defense's fabrication theory. *See State v. Race,* 383 N.W.2d 656, 664 (Minn.1986). This was Casady's major contention at trial and in light of his position we do not find the prosecutor's comment so improper to require a new trial.

■ On appeal Casady claims that several other portions of the prosecutor's closing argument were improper. We agree that portions of the prosecutor's closing argument constituted prosecutorial misconduct. The prosecutor invited the jury to consider issues beyond the scope of the case when he argued:

> This is an important case. This is a very important case. It's important for a lot of reasons. It's important for one reason, for something every little girl wants and has a right to—the right to go through life not having to worry day to day about her dad taking her in the bedroom, forcing her to do things she doesn't like. She's got a right to go through life not having to keep the same type of horrible secret inside her month after month, year after year.

> Children have the right to go through life without having nagging memories of their father sticking their penis in their mouth, ejaculating in their mouth. That child's going to carry around the psychological, emotional scars of that abuse for the rest of her life, and no child should have to go through that type of abuse. Nobody's got the right to put a child like that through that type of abuse.

> \*　\*　\*　\*　\*　\*

> This is the type of case that is literally going to test the integrity of his jury system. And remember, the standard of justice that exists in this country is largely determined by people like you, juries. Juries determine what will and what will not be tolerated in this county. Juries determine, you determine what you want the word "justice" to mean.

> And, ladies and gentlemen, if there is any justice in this system for a girl like [J.C.], then it will begin and it will end in

this courtroom. We are asking each one of you to reach down deep inside you, find the courage and the common sense to see the truth for what it is. And if there's any truth in this world, and if justice is more than just a word, then it's up to each and every one of you to do something about it. Because if you don't, nobody will.

Such argument is clearly improper. *See State v. Threinen,* 328 N.W.2d 154, 157 (Minn.1983).

■ Ordinarily the failure to object at trial to improper comments in a closing argument precludes review on appeal unless the comments are unduly prejudicial. *State v. Parker,* 353 N.W.2d 122, 128 (Minn.1984). The fact that defense counsel did not object to these statements even though he did object to other statements suggests that he did not find fault or did not consider the argument prejudicial. *See State v. Marquetti,* 322 N.W.2d 316, 318 (Minn.1982). Also recognizing the trial judge's opportunity to appraise the effect of the prosecutorial misconduct, we note that the trial court did not find the argument so improper to require curative instructions or intervention sua sponte. See *State v. Stufflebean,* 329 N.W.2d 314, 319 (Minn.1983). Further, we note again the presence of substantial evidence of Casady's guilt. Consequently, although we strongly disapprove of the prosecutor's statements in his closing argument, we conclude that the misconduct was not unduly prejudicial and did not constitute reversible error.

### V.

Casady claims that there were not sufficient factors to justify the trial court's doubling of the presumptive sentence. Trial courts have considerable discretion in deciding if a departure is justified and this court defers to that discretion unless it is clearly abused.

We note that some of the factors the trial court relied on for departure have been found inappropriate. The court cites

particular cruelty as a factor noting J.C.'s isolation when the abuse occurred, the prolonged period of abuse and her fear. We note that isolation and fear are inherent elements in this type of crime. *See State v. Brusven,* 327 N.W.2d 591, 594 (Minn. 1982). The fact that the abuse occurred over a prolonged period and involved multiple acts of sexual misconduct was considered by the legislature in enacting Minn. Stat. § 609.342, subd. 1(h)(v) ("the sexual abuse involved multiple acts committed over an extended period of time"). The fact that the abuse occurred in the victim's home may also be inherent in this type of crime. *See State v. Cermak,* 344 N.W.2d 833, 840 (Minn.1984). Also while there was physical evidence consistent with repeated penetration there was not evidence of permanent injury or the need for medical treatment. *See State v. Partlow,* 321 N.W.2d 886, 887 (Minn.1982).

 Despite the trial court's erroneous reliance on certain factors, there were other factors to justify the departure. There was evidence of multiple types of penetration. This has been recognized as a proper factor for departure. *State v. Dietz,* 344 N.W.2d 386, 389 (Minn.1984). There was evidence of sexual misconduct in the presence of other minors. *See State v. Profit,* 323 N.W.2d 34, 36 (Minn.1982). Finally the length of the misconduct was extremely prolonged. *Dietz,* 344 N.W.2d at 389. Based on these facts, we cannot say that the trial court's sentencing departure was a clear abuse of discretion.

### DECISION

The evidence is sufficient to sustain the jury's verdict. The admission of *Spreigl* evidence was not reversible error. Neither did the prosecutor's misconduct in his closing argument constitute reversible error. The trial court did not clearly abuse its discretion in making an upward durational departure.

**Affirmed.**

FOLEY, Judge (dissenting).

I respectfully dissent. After determining that the trial court erred in admitting the *Spreigl* evidence, the majority nevertheless concludes that such error was harmless. I disagree. Given the extremely prejudicial nature of Brynteson's testimony and the inadequacy of the notice given to defense counsel, admission of this evidence was overly prejudicial and unfairly influenced the jury.

Allegations of sexual misconduct are fraught with potential for bias, and particular caution must be exercised. The majority opinion outlines the "more troublesome" aspects of the trial court's decision to admit Brynteson's testimony: the offer of proof of Casady's participation in that alleged offense was weak and not clear and convincing; the trial court refused to conduct a hearing on the *Spreigl* evidence but allowed the evidence and Brynteson testified as part of the State's case-in-chief. The trial court's action was all determined by an offer of proof by the prosecuting attorney. Any connection between the alleged offense and present charge was "far too tenuous" in time, place, and modus operandi to meet the relevancy requirement. These concerns render admission of the testimony undeniably prejudicial. Its introduction likely resulted in an unjust verdict.

Nor does the majority fully appreciate the prejudicial effect that the lack of notice had on Casady's case. It holds that because there is no evidence that the prosecutor's delay was intentional, and because there was an opportunity for cross-examination and for Casady to deny the allegation himself, admission of the evidence with only one day's notice was not an abuse of the trial court's discretion. Such a conclusion defeats the very purpose of a *Spreigl* notice, which is to assure that the accused has *adequate* time to prepare a defense.

Casady was notified one day before the trial was to begin that the State would seek to introduce Brynteson's testimony regarding an isolated incident which occurred about 13 years before. This lack of notice left Casady little or no opportunity to in-

vestigate and gather evidence. Under these circumstances, it would be difficult for any attorney to prepare and effectively conduct cross-examination or to persuasively question and attack relevancy. The majority nevertheless finds admission of Brynteson's testimony harmless error partly because Casady had an opportunity to cross-examination, question relevancy, and deny the allegation himself. Such reasoning fails to recognize that Casady's opportunity to rebut Brynteson's testimony effectively was seriously limited by the lack of notice. *See State v. Doughman*, 384 N.W.2d 450 (Minn.1986) (error in admission of *Spreigl* evidence prejudicial, warranting new trial where defendant had no notice of state's intent to introduce such evidence, and its introduction may have resulted in unjust verdict).

Admission of evidence of a prior sexual offense without adequate notice is particularly prejudicial.

> To allow such testimony is to infringe the constitutional right of the defendant to demand the nature and cause of the accusation against him. Such procedure might be palliated if there was any provision for giving the defendant notice of the other charges in such cases; but it is utterly repugnant to justice and fair play to accuse a person of a stated crime and make that the excuse for what is really trying him for a number of others by springing them unheralded upon the attention of the jury to produce a verdict of guilty which might not result except for the bias thus imparted to the minds of the jurors * * *.

*State v. Spreigl*, 272 Minn. 488, 496–97 n. 20, 139 N.W.2d 167, 173 n. 20 (1965) (quoting *State v. Jensen*, 70 Or. 156, 158, 140 P. 740, 741 (1914)).

None of the criteria outlined in *Spreigl* as to identity or common scheme and plan were met here—nor could such evidence establish the absence of mistake or accident. In effect, the evidence could only be construed as an attack on defendant's character—and this kind of evidence is inadmissible to show that the defendant acted in conformity therewith. *See State v. Jones*, 392 N.W.2d 224 (Minn.1986). Defendant was not charged with any crime alleged to have occurred involving sexual misconduct toward Brynteson.

Under the guise of harmless error, the majority easily circumvents an important safeguard. The Brynteson evidence, similar in respect to the current charge (a sexual offense against a minor female), would certainly unfairly influence a jury. The defendant was helpless to combat this *Spreigl* evidence (already 13 years old). However distasteful the charge, fundamental rights must be protected. Too often, by too many of us judges, the term "harmless error" is used, sometimes to the point of becoming hackneyed and a serious impediment to the basic notion of a fair trial. This is such a case. No trial is perfect, but it must at least be fair. This was not. I would reverse and grant a new trial.