STATE of Minnesota, Respondent,

v.

**Brian James KASPER, Appellant.**

No. C3–86–1415.

Court of Appeals of Minnesota.

May 19, 1987.

Review Granted June 26, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Anne E. Peek, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, James M. Burseth, Asst. Public Defender, Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and LANSING and RANDALL, JJ.

## OPINION

LANSING, Judge.

Brian Kasper was convicted of third-degree criminal sexual conduct, Minn.Stat. § 609.344, subd. 1(c) (Supp.1985). On appeal he disputes the sufficiency of the evidence to support the conviction and the admission of *Spreigl* evidence. We affirm.

## FACTS

Twenty-year-old S.J. moved to Minnesota in August 1985 and lived with an older sister in New Hope. She obtained employment and on Friday night, October 25, 1985, joined several co-workers at Mingle's, a bowling alley and bar with a small dance area in Brooklyn Park. S.J. did not have a car and made advance arrangements with a friend to get a ride home. During the evening at Mingle's, S.J. had three vodka screwdrivers. Her arranged driver could not take her home and S.J. called a taxi. While waiting outside for the taxi, she was approached by Brian Kasper. He talked to her and offered her a ride home. S.J. refused. They continued to talk and, after 15 minutes, when it appeared unlikely that a taxi would come, she accepted a ride from Kasper.

S.J. noticed that Kasper was driving in the wrong direction and told him, but he said he knew a shortcut. Kasper drove to his mother's home, where he lived, telling S.J. he intended to get directions and brush his teeth. When the outside light came on, he backed up and drove off. He drove onto a dirt road and stopped. S.J. said she wanted to go home, but Kasper slid over and started kissing her.

S.J. was unable to push him away, and Kasper told her to be quiet. He pulled up her shirt and forced her to lie down. He grabbed a 2″ x 4″ board about 18 inches long which supported the seat and threw it in the back seat. S.J. feared he would use it on her. According to S.J., Kasper then succeeded in removing her pants and engaged in nonconsensual sexual intercourse.

They dressed and Kasper drove S.J. home. He demanded S.J.'s name and telephone number. S.J. knew that Kasper already knew where she lived and worked and, afraid to give an incorrect number, she complied. S.J. did not tell her sister what happened when she arrived home because she was afraid. She planned not to tell anyone and wanted to believe it had not happened.

The next day, S.J. talked to a sister in Washington and told her that she had been raped. S.J. then told the sister with whom she lived and they told their brother, who called the police. S.J. described Kasper

and his car to police investigators. She immediately identified Kasper from a photo display. According to the police investigator, S.J. was visibly shaken when she identified Kasper. She went with the police officer to the area thought to be Kasper's house and to the location of the assault. As S.J. was riding with the officer, she saw Kasper drive by. She covered her face and cried, "That's him; that's him!"

Kasper was later arrested. Police searched his car and siezed a 2" x 4" board. They also removed a blanket with blood and semen stains. Chemical analysis indicated that Kasper could have deposited the semen and that the source of the bloodstains could have been Kasper and S.J.

When questioned, Kasper admitted giving S.J. a ride. He stated he saw her in front of Mingle's and drove her straight home. When told that S.J. said he went in the opposite direction, Kasper said it was possible he drove to his mother's home. He then said he took S.J. home. After being told his car would be searched, he told the officer he could have driven down the dirt road with S.J. He denied having sex with S.J.

The State presented *Spreigl* evidence that Kasper assaulted a young woman under similar circumstances a few months before this incident.

At trial Kasper claimed he met S.J. inside Mingle's and danced with her. He claimed they had consensual sexual intercourse and she gave him her phone number so that they could go dancing the following weekend.

## ISSUES

1. Was the evidence sufficient to sustain appellant's conviction?

2. Did the trial court abuse its discretion in admitting *Spreigl* evidence?

## ANALYSIS

### I

■ Kasper was convicted of engaging in sexual penetration using "force or coercion to accomplish the penetration." Minn.

Stat. § 609.344, subd. 1(c) (Supp.1985). He claims the evidence did not establish that he used force or coercion. Force is defined as

the infliction, attempted infliction, or threatened infliction by the actor of bodily harm or commission or threat of any other crime by the actor against the complainant or another, which causes the complainant to reasonably believe that the actor has the present ability to execute the threat and also causes the complainant to submit.

Minn.Stat. § 609.341, subd. 3 (1984). Coercion is defined as

words or circumstances that cause the complainant reasonably to fear that the actor will inflict bodily harm upon, or hold in confinement, the complainant or another.

Minn.Stat. § 609.341, subd. 14 (1984).

Kasper's contentions are without merit. S.J.'s testimony sufficiently establishes that Kasper used force or coercion to accomplish the penetration. *See State v. Carter*, 289 N.W.2d 454, 455 (Minn.1979) (defendant, although using neither actual force nor verbalized threats of force, intentionally created an atmosphere of fear which caused complainant to submit to sexual advances); *State v. Daby*, 359 N.W.2d 730, 733 (Minn.Ct.App.1984); *State v. Middleton*, 386 N.W.2d 226, 230 (Minn.1986); *State v. Meech*, 400 N.W.2d 166, 168 (Minn. Ct.App.1987) (when actor coerces complainant so as to cause her fear while accomplishing sexual contact, requirement of coercion in § 609.345, subd. 1(c), is satisfied). While not required, Minn.Stat. § 609.347, subd. 1 (1984), S.J.'s testimony was significantly corroborated. Kasper's testimony was inconsistent with his earlier statement and was largely impeached at trial.

### II

Kasper contends the trial court erred in admitting *Spreigl* evidence because the evidence that the other incident occurred was not clear and convincing.

At the omnibus hearing, in which the only issue raised was the *Spreigl* evidence,

the prosecutor presented the testimony of an Anoka County investigator that the *Spreigl* victim, L.D., picked Kasper from a line-up. The prosecutor verbally stated the facts of the assault and the ruling was reserved until trial.

During trial, outside the jury's presence, a friend of L.D. testified that she knew Kasper. The testimony did not place Kasper at the scene of the alleged assault of L.D. or in the company of L.D. The prosecutor then stated that L.D. made a photo identification and would attempt to identify Kasper in court. No further *Spreigl* evidence was offered. The prosecutor restated the allegations of the *Spreigl* incident as part of an "offer of proof."

The trial court ruled that the evidence that Kasper participated in the *Spreigl* incident was clear and convincing, material and relevant, and that its probative value outweighed its prejudical effect.

At trial 17-year-old L.D. testified that on June 20, 1985, she was invited to a party at a friend's apartment and needed a ride. Kasper, who was at the party, offered to pick her up and take her home. About 9:00 p.m. L.D. was left alone in the apartment with Kasper and another man, who had passed out. Kasper proposed they go into the bedroom to talk and, after they were there, he pushed L.D. down and attempted to penetrate her sexually. L.D. finally pushed him off and Kasper offered to take her home. L.D. agreed and they went outside, but returned to pick up the unconscious man in the apartment. At that point Kasper again attacked L.D., ripping her jeans, but L.D. ran out of the apartment. She reported the incident and identified Kasper's picture in a photo line-up.

█ In determining whether *Spreigl* evidence is admissible, the trial court must find that the evidence of defendant's participation in the other incident is clear and convincing, that the evidence is relevant and material to the State's case, and that its probative value outweighs its prejudicial effect. *State v. Kumpula*, 355 N.W.2d 697, 702–03 (Minn.1984). The trial court must, however, analyze the evidence and

carefully consider these factors. *State v. Jones*, 392 N.W.2d 224, 234 (Minn.1986).

Admitting *Spreigl* evidence where doubt remains on whether a prior crime or bad act has occurred may result in reversible error. The police officer's testimony that L.D. picked Kasper from a line-up and the identification of Kasper by L.D.'s friend did not establish that an offense had occurred. In *State v. Doughman*, 384 N.W.2d 450, 454 (Minn.1986), the trial court admitted *Spreigl* evidence that the defendant had threatened to burn down another person's barn and that a few days later the barn burned down. Because there was no evidence that the defendant participated in the burning or that the fire was of incendiary origin, the supreme court reversed and ordered a new trial, holding that the admission of *Spreigl* evidence was prejudicial. *Id.* at 455.

█ In *State v. Casady*, 392 N.W.2d 629, 632–33 (Minn.Ct.App.1986), *pet. for rev. denied*, (Minn. Sept. 24, 1986), this court concluded it was error for the trial court to rely solely on the prosecutor's assertions of what the *Spreigl* testimony would show. *See also State v. Nutt*, 381 N.W.2d 480, 484–85 (Minn.Ct.App.1986), *pet. for rev. denied*, (Minn. Mar. 27, 1986). We recognize that the trial court has some discretion in determining whether the State is required to call a *Spreigl* witness to testify at a hearing, *State v. Lindahl*, 309 N.W.2d 763, 766 (Minn.1981), but in this case it was error not to do so because there was no other evidence that the *Spreigl* incident occurred.

█ We are convinced, however, that the error does not require reversal. The *Spreigl* witness, L.D., testified at trial and was cross-examined. Defense counsel was free to argue the relevancy of the *Spreigl* matter to the jury. The trial court gave appropriate cautionary instructions at the time the evidence was offered and in final instructions. L.D.'s testimony at trial was consistent with the offer of proof made by the prosecutor. Even if there had been a *Spreigl* hearing in which L.D. testified, it is unlikely her testimony would have differed from her trial testimony. Thus, we find no

unfair prejudice to Kasper. *Casady,* 392 N.W.2d at 633; *see State v. Burns,* 394 N.W.2d 495, 498 (Minn.1986).

■ Kasper's contention that the evidence did not meet the *Spreigl* relevancy requirements is without merit. The *Spreigl* offense occurred only four months before the charged offense, three to four miles away from the place of the present offense. The modus operandi was similar. In both instances Kasper offered a ride home to young women he met casually. In both cases Kasper was cordial and conversational with the women. In both cases Kasper had been drinking and sexually assaulted the women at night. The court did not abuse its discretion in admitting the evidence. *See State v. Spencer,* 366 N.W.2d 656, 660 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. July 11, 1985).

## DECISION

Kasper's conviction for third-degree criminal sexual conduct is affirmed.

Affirmed.

RANDALL, J., concurs specially.

RANDALL, Judge, concurring specially

I concur in the majority's conclusion that the erroneous introduction of the *Spreigl* incident did not, on this set of facts, mandate a new trial. However, to the majority's reasoning that the *Spreigl* incident was not proved by clear and convincing evidence, I would add that I believe a fair extension of *State v. Wakefield,* 278 N.W.2d 307 (Minn.1979) dictates that this *Spreigl* incident should not have come in under any circumstances.

In *Wakefiled,* the defendant was faced, during a trial for criminal sexual conduct in the first degree, with *Spreigl* evidence elicited from a woman at a previous trial where Wakefield was charged with rape but acquitted. The Minnesota Supreme Court held that even though evidence of crimes from which a defendant has been acquitted can still, theoretically, "meet the [*State v.*] *Billstrom* [, 276 Minn. 174, 149 N.W.2d 281 (1967)] standard of being clear and convincing," the "interests of fairness and finality" dictate that the defendant should not have to answer for any alleged crime for which he stood trial and was acquitted. *Id.,* 278 N.W.2d at 308.

The supreme court said:

Even so, it is a basic tenet of our jurisprudence that once the state has mustered its evidence against a defendant and failed, the matter is done. In the eyes of the law the acquitted defendant is to be treated as innocent and in the interests of fairness and finality made no more to answer for his alleged crime. It is our view that the admission into a trial of evidence of crimes of which the defendant has been acquitted prejudices and burdens the defendant in contravention of this basic principle and is fundamentally unfair. Therefore, we conclude that under no circumstances is evidence of a crime other than that for which a defendant is on trial admissible when the defendant has been acquitted of that other offense.

*Wakefield,* 278 N.W.2d at 308, 309.

In other words, if a defendant stands trial on a charge and is acquitted, no matter how strong the evidence may have been, the defendant is done with that set of allegations and need not answer to them again. It would belabor the obvious to go into the reasoning and the fundamental fairness of this holding.

Applying the rationale of *Wakefield* to the *Spreigl* evidence in this case, we have a parallel. Here the evidence of appellant's participation in the previous *Spreigl* incident was so weak the assistant county attorney refused to even charge the case out. She wrote in her report:

I recommend denying a complaint for Criminal Sexual Conduct in this matter because there is insufficient evidence to show that the potential defendant [Kasper] used force or coercion to accomplish the sexual contact.

Pursuant to this recommendation, the case was never charged. Ironically, because the evidence was so weak, appellant never went to trial on it, thus could never be

"acquitted." Therefore the State now claims the right to use the incident against appellant at a later trial.

Comparing *Wakefield* to this case, we have the situation in *Wakefield* where the facts of the *Spreigl* incident were strong enough that a prosecutor was able to get a criminal complaint signed by a judge, proceed through trial, and get to a jury. The supreme court held, nevertheless, that the incident, because of the acquittal, could not be used later as *Spreigl* evidence. Here, the evidence was not even strong enough to get to trial. Yet the evidence, according to the trial court, could be introduced if "clear and convincing." The logic and reasoning of *Wakefield* dictates differently. It would seem that if a prosecutor cannot use evidence from a trial in which a defendant was acquitted, the prosecution should not be able to use evidence from a bare allegation in a case not deemed worthy to bring to trial.